## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KENDALL DEAN MITCHELL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-CV-0442-GKF-CDL** |
| | ) | |
| **SCOTT NUNN,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

Before the Court is Respondent Scott Nunn's motion (Dkt. 8) to dismiss as untimely the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. 1) filed by Petitioner Kendall Dean Mitchell, a state inmate appearing *pro se*.[1]  Having reviewed the petition, the dismissal motion, Nunn's brief in support of the motion (Dkt. 9) and Mitchell's response (Dkt. 10) in opposition to the motion, the Court finds and concludes that the petition is untimely.  The Court therefore grants Nunn's motion and dismisses the petition, with prejudice, as barred by 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations.

## I.    Background

Mitchell brings this action to challenge the judgment entered against him on April 26, 1989, in the District Court of Washington County, Case No. CRF-1988-295, after he pleaded guilty to committing first-degree murder.  Dkt. 1, Pet. 1; Dkt. 9-2, J. and Sentence 1.[2]  Mitchell did not move to withdraw his plea or perfect a certiorari appeal in the Oklahoma Court of Criminal Appeals (OCCA) to obtain direct review of his judgment.  Dkt. 9-7, Order (May 24, 2019) 1.

---

[1] Because Mitchell appears without counsel, the Court liberally construes his filings.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[2] For consistency, the Court's citations refer to the CM/ECF header pagination.

Mitchell unsuccessfully sought postconviction relief in 1994, alleging he received ineffective assistance of counsel and that his plea was not knowing and voluntary.  Dkt. 9-1, Docket Sheet 3 (Dist. Ct. Order Nov. 7, 2018).[3]

Decades later, on March 17, 2017, Mitchell filed a petition for writ of habeas corpus, in the District Court of Alfalfa County, alleging, in part, that he was illegally restrained because the "Washington County District Court did not have subject matter jurisdiction in the case of a crime committed by an Indian in Indian Count[r]y." Dkt. 9-3, State Habeas Pet. 1, 4.  The Alfalfa County District Court denied the petition on August 3, 2017, concluding that Mitchell must pursue his jurisdictional claim through an application for postconviction relief filed in the Washington County District Court.  Dkt. 9-4, Order (Aug. 3, 2017) 1-3.   The OCCA agreed with that conclusion.  Dkt. 9-5, Order (Mar. 16, 2018) 1-2.

Mitchell then filed an application for postconviction relief in the Washington County District Court on March 26, 2018, asserting his challenge to the trial court's criminal jurisdiction. Dkt. 9-6, Appl. 1. Mitchell alleged that he is a member of the Cherokee Nation, he committed the murder two miles northeast of Copan, Oklahoma and within the boundaries of the Cherokee Nation Reservation, and "the Cherokee Nation [R]eservation has not been disestablished or diminished since the boundaries were set in the 1866 Treaty of Washington, July 19, 1866, 14 Stat. 799." Dkt. 9-6, Appl. 2.  With the application, Mitchell submitted proof that he has some degree of Indian blood and that he has been a certified member of the Cherokee Nation of Oklahoma since November 1984.  Dkt. 9-6, Appl. 5.  Mitchell argued that, on these facts, he should have been prosecuted under the Major Crimes Act, 18 U.S.C. § 1153, for committing murder in Indian

---

[3] Nunn submitted with his brief a copy of the state-court docket sheet (Dkt. 9-1) containing links to some state court documents that he did not submit with the brief.  The Court thus refers to documents available through those links by describing the document and filing date in a parenthetical following the citation to the docket sheet.

country.  Dkt. 9-6, Appl. 2.  As legal support for his jurisdictional claim, Mitchell cited four cases: *Murphy v. Royal*, 875 F.3d 896 (10th Cir. 2017) ("*Murphy I*"), *aff'd sub nom. Sharp v. Murphy*, 140 S. Ct. 2412 (2020) ("*Murphy II*"); *Magnan v. Trammell*, 719 F.3d 1159 (10th Cir. 2013), *Cravatt v. State*, 825 P.2d 277 (Okla. Crim. App. 1992), and *United States v. Sands*, 968 F.2d 1058 (10th Cir. 1992).  Dkt. 9-6, Appl. 3.  Finally, Mitchell noted that he had not raised this claim through a direct appeal, but he cited *Wackerly v. State*, 237 P.3d 795, 797 (Okla. Crim. App. 2010) for the proposition that a challenge to the trial court's jurisdiction can be raised at any time and cannot be waived.  Dkt. 9-6, Appl. 3 & n.1.

The Washington County District Court denied Mitchell's application on November 7, 2018.  Dkt. 9-1, Docket Sheet 3 (Dist. Ct. Order Nov. 7, 2018).  The court accepted as true that Mitchell is a member of the Cherokee Nation and that his tribal card showed he possessed some Indian blood, but found no evidence in the record describing the location of the murder "with any specificity."  Dkt. 9-1, Docket Sheet 3 (Dist. Ct. Order Nov. 7, 2018).  The court reasoned that, to the extent Mitchell relied on *Murphy I*, that case "only address[ed] the Muscogee (Creek) Nation tribe and does not further elaborate on the application to other Oklahoma tribes" and gives "[n]o guidance on how said ruling is to be applied in cases like the one at bar that involves a different tribe, or for determining the current boundaries for a certain tribe."  Dkt. 9-1, Docket Sheet 3 (Dist. Ct. Order Nov. 7, 2018).  The court noted that Mitchell's "case is now almost 30 years old and [he] has never appealed his conviction," and reasoned that Mitchell waived any claims that could have been raised on appeal or in previous postconviction proceedings.  Dkt. 9-1, Docket Sheet 3 (Dist. Ct. Order Nov. 7, 2018).  Finally, the court stated, "The *Murphy* case is presently pending before the United States Supreme Court.  Until such time as the matter is decided by the Supreme Court and further direction is given to lower courts, this Court will not take action which could have irreversible effects."  Dkt. 9-1, Docket Sheet 3 (Dist. Ct. Order Nov. 7, 2018).

Mitchell filed a postconviction appeal, and the OCCA affirmed the denial of postconviction relief on May 24, 2019.  Dkt. 9-7, Order (May 24, 2019) 1.  The OCCA reasoned that Mitchell's reliance on *Murphy I* was "premature" because the United States Court of Appeals for the Tenth Circuit stayed its decision pending the outcome of the Supreme Court's review of that decision.  Dkt. 9-7, Order (May 24, 2019) 1-2.  The OCCA further reasoned that, to the extent Mitchell relied on cases other than *Murphy I*, Mitchell "ha[d] not established any sufficient reason why his other arguments were not asserted prior to the entry of his guilty plea or in direct appeal proceedings from his Judgment and Sentence."  Dkt. 9-7, Order (May 24, 2019) 3.  Finally, citing Okla. Const. Art. VII, § 7, which provides state district court's "unlimited original jurisdiction of all justiciable matters in Oklahoma," the OCCA reasoned that Mitchell "ha[d] not established that the District Court lacked jurisdiction in this case."  Dkt. 9-7, Order (May 24, 2019) 3.

On July 9, 2020, the Supreme Court issued decisions in two cases relevant to Mitchell's claim that the trial court lacked jurisdiction—*McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), and *Murphy II*.  *McGirt* reached the Supreme Court via a petition for writ of certiorari filed by a state prisoner who sought review of the OCCA's decision denying his application for postconviction relief.  *See McGirt v. Oklahoma*, 140 S. Ct. 659 (Dec. 13, 2019) (granting petition for writ of certiorari).  Like the habeas petitioner in *Murphy I*, the prisoner in *McGirt* claimed that because he is Native American, the State lacked jurisdiction to prosecute him for serious offenses he committed within the boundaries of the Muscogee (Creek) Nation Reservation.  *McGirt*, 140 S. Ct. at 2459; *Murphy I*, 875 F.3d at 928.  The *McGirt* Court held that because Congress did not disestablish the Muscogee (Creek) Nation Reservation the land within the historical boundaries of that reservation is "Indian country," as defined in 18 U.S.C. § 1151(a), and, as a result, the federal government has exclusive jurisdiction to prosecute certain crimes committed within those boundaries if those crimes are committed by or against Native Americans.  *McGirt*, 140 S. Ct. at

2468, 2479-80.  Relying on *McGirt*, the Supreme Court in *Murphy II* summarily affirmed the Tenth Circuit's 2017 decision, in *Murphy I*, that had reached the same conclusion.  *Murphy II*, 140 S. Ct. at 2412.  Neither case, however, determined whether Congress had or had not disestablished the Cherokee Nation Reservation.  *See, e.g.*, *McGirt*, 140 S. Ct. at 2479 ("Each tribe's treaties must be considered on their own terms, and the only question before us concerns the Creek.").

One week after the Supreme Court issued its decisions in *McGirt* and *Murphy II*, Mitchell filed a motion asking the Washington County District Court to vacate his judgment and to dismiss his case for lack of jurisdiction. Dkt. 9-8, Mot. to Dismiss 1-4.  The Washington County District Court denied the motion on September 14, 2020.  Dkt. 9-1, Docket Sheet 4.  Mitchell filed a postconviction appeal from the denial of the motion, and on November 9, 2020, the OCCA remanded the case to the Washington County District Court for an evidentiary hearing.  Dkt. 9-1, Docket Sheet 5.  Following an evidentiary hearing in February 2021, the Washington County District Court issued an order finding that Mitchell is a member of the Cherokee Nation, that he committed murder within the historical boundaries of the Cherokee Nation Reservation, and that the State of Oklahoma stipulated to the allegations of Mitchell's Indian status and the location of his crime.  Dkt. 9-1, Docket Sheet 7 (Findings of Fact and Order Mar. 5, 2021).

On March 11, 2021, the OCCA held that Congress did not disestablish the Cherokee Nation Reservation, *Hogner v. State*, 500 P.3d 629, 635 (Okla. Crim. App. 2021), or the Chickasaw Reservation, *Bosse v. State*, 484 P.3d 286 (Okla. Crim. App. Mar. 11, 2021), *corrected* (Mar. 19, 2021), *withdrawn, and superseded by* 499 P.3d 771 (Okla. Crim. App. Oct. 7, 2021).

On April 19, 2021, the OCCA remanded Mitchell's case to the Washington County District Court, for a second time, and directed the court to make further findings of fact and conclusions of law.  Dkt. 9-1, Docket Sheet 8 (Order April 19, 2021).  On May 14, 2021, the Washington County District Court granted the State's request for a stay pending the disposition of the State's

then-pending petition for writ of certiorari, filed in the Supreme Court, challenging the OCCA's decision in *Bosse*. Dkt. 9-1, Docket Sheet 8-9.  The OCCA later stayed Mitchell's postconviction appeal at the State's request.  Dkt. 9-1, Docket Sheet 9 (Order July 8, 2021).

On August 12, 2021, the OCCA reaffirmed its prior decisions recognizing the existence of the Cherokee, Choctaw, Chickasaw and Seminole Reservations, but held "that *McGirt* and [the OCCA's] post-*McGirt* decisions recognizing these reservations shall not apply retroactively to void a conviction that was final when *McGirt* was decided."  *State ex rel. Matloff v. Wallace*, 497 P.3d 686, 689 (Okla. Crim. App. 2021).  Based on its reasoning in *Wallace*, the OCCA issued an order on September 15, 2021, lifting the stay of Mitchell's postconviction appeal and concluding that Mitchell was not entitled to postconviction relief.  Dkt. 9-9, Order (Sept. 15, 2021) 1-3.

Mitchell then sought federal habeas relief in this Court.  In his petition, filed October 4, 2021,[4] Mitchell claims he is being held in state custody "in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), for three reasons:  (1) the trial court lacked jurisdiction over his criminal prosecution because Mitchell is a Cherokee Nation citizen and he committed murder within the boundaries of the Cherokee Nation Reservation, (2) the trial court lacked jurisdiction over his criminal prosecution because treaties between the United States and the Cherokee Nation—specifically, the 1835 Treaty of New Echota and the 1866 Treaty of Washington—exclude state criminal jurisdiction, and (3) the OCCA's "failure to apply *McGirt v. Oklahoma* in post-conviction proceeding contradicts Supreme Court precedent and is ex post facto."  Dkt. 1, Pet. 5-8.

---

[4] The Clerk of Court received the petition on October 12, 2021.  Dkt. 1, Pet. 1.  Applying the prison mailbox rule, the Court deems the petition filed on October 4, 2021.  *Houston v. Lack*, 487 U.S. 266, 276 (1988); Rule 3(d), *Rules Governing Section 2254 Cases in the United States District Courts*.

Nunn moves to dismiss the petition as barred by 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations.  Dkts. 8, 9.

## II.    Legal standards

The Antiterrorism and Effective Death Penalty Act (AEDPA) establishes a one-year statute of limitations for state prisoners seeking federal collateral review of a state-court judgment under 28 U.S.C. § 2254.  The limitation period "run[s] from the latest of" one of four dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Regardless of which provision governs the commencement date, the limitation period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  *Id.* § 2244(d)(2).  An application for postconviction relief or other collateral review is "properly filed," for purposes of statutory tolling, "when its delivery and acceptance are in compliance with the applicable [state] laws and rules governing filings."  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  But a properly filed application for postconviction relief or other collateral review tolls the limitation period only if it is filed before the one-year limitation period expires. *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006).  Because the AEDPA's one-year limitation period is not jurisdictional, federal courts

may, in some circumstances, toll the limitation period for equitable reasons.  *Holland v. Florida*, 560 U.S. 631, 645 (2010).[5]

## III.   Analysis

Nunn contends the petition is untimely under 28 U.S.C. § 2244(d)(1)(A), that no other provision of § 2244(d)(1) provides a later commencement date for Mitchell's one-year limitation period, and that Mitchell has not shown that equitable tolling is warranted.  Dkt. 9, Resp't's Br. 4-10.  Mitchell does not appear to suggest that his petition is timely under § 2244(d)(1)(A).  Instead, he argues that his petition is timely because his one-year limitation period commenced at a later date, under either § 2244(d)(1)(C) or § 2244(d)(1)(D).  Dkt. 1, Pet. 13; Dkt. 9, Resp. 1-2.  Alternatively, he contends that if the petition is untimely, the circumstances of this case warrant equitable tolling.  Dkt. 9, Resp. 2.

### A.   The petition is untimely under 28 U.S.C. § 2244(d)(1)(A).

The parties appear to agree, and the Court finds, that the petition is untimely under § 2244(d)(1)(A).  Under that provision, the one-year limitation period commences on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

Because Mitchell's April 26, 1989 judgment rests on a conviction arising from his guilty plea and he did not move to withdraw his plea or file a certiorari appeal in the OCCA to challenge that judgment, his judgment became final on May 5, 1989.  *See Clayton v. Jones*, 700 F.3d 435,

---

[5] Federal courts also may excuse noncompliance with the statute of limitations if the petitioner makes "a credible showing of actual innocence."  *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).  But even with the benefit of liberal construction, the Court does not read Mitchell's petition or response as asserting an actual-innocence claim.  The Court thus declines to consider Nunn's argument that this equitable exception does not apply.  Dkt. 9, Resp't's Br. 10-12.

441 (10th Cir. 2012) (noting that an "application to withdraw guilty plea and the evidentiary hearing are both necessary and critical steps in securing [a certiorari] appeal" (quoting *Randall v. State*, 861 P.2d 314, 316 (Okla. Crim. App. 1993)). But because his conviction became final before Congress enacted the AEDPA's one-year statute of limitations, Mitchell's one-year limitation period commenced on April 24, 1996, and expired on April 24, 1997. *Serrano v. Williams*, 383 F.3d 1181, 1183 (10th Cir. 2004). As previously discussed, Mitchell did not file any applications for postconviction relief or other collateral review within this one-year limitation period and thus is not entitled to statutory tolling. *Clark*, 468 F.3d at 714. On these facts, it is clear that the petition, filed October 4, 2021, is untimely under § 2244(d)(1)(A).

Unless Mitchell can show that a later commencement date applies or that his circumstances warrant equitable tolling, the applicable statute of limitations bars relief on the claims asserted in the petition.

### B.     28 U.S.C. § 2244(d)(1)(C) does not apply.

Mitchell first contends that the petition is timely under 28 U.S.C. § 2244(d)(1)(C). Dkt. 10, Resp. 1. Under that provision, the one-year limitation period begins on "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). Mitchell argues that the OCCA's ruling in *Wallace* suggests that the *McGirt* Court announced a "new constitutional rule." Dkt. 10, Resp. 1. Thus, he appears to argue, his one-year limitation period commenced on July 9, 2020, when *McGirt* was decided, he had until July 9, 2021, to file a timely petition raising a jurisdictional claim and, with the benefit of statutory tolling, the petition is timely. Dkt. 10, Resp. 1.

This argument fails for two reasons. First, Mitchell misreads *Wallace* as the OCCA determined there "that *McGirt* announced a rule of criminal *procedure*," not that *McGirt*

announced a new constitutional rule. *Wallace*, 497 P.3d at 691 (emphasis in original). Second, even disregarding *Wallace*'s characterization of *McGirt*, nothing in the *McGirt* decision itself supports that it recognized a new constitutional right relevant to Mitchell's claims. As previously noted, the *McGirt* Court determined that because Congress did not disestablish the Muscogee (Creek) Nation Reservation—as that reservation was established through various treaties between the United States and the Muscogee (Creek) Nation—the land within the boundaries of that reservation is "Indian country," as defined in 18 U.S.C. § 1151(a). Based on that determination, the *McGirt* Court explained that (1) "the [Major Crimes Act] applies only to certain crimes committed in Indian country by Indian defendants," (2) 18 U.S.C. § 1152 "provides that federal law applies to a broader range of crimes by or against Indians in Indian country," and (3) "[s]tates are otherwise free to apply their criminal laws in cases of non-Indian victims and defendants, including within Indian country." 140 S. Ct. at 2479. Thus, while the *McGirt* Court's recognition of the continued existence the Muscogee (Creek) Nation Reservation is certainly "new," the *McGirt* Court did not newly recognize a criminal defendant's constitutional due-process right to be tried by a court of competent jurisdiction.

Because the *McGirt* decision did not recognize any new constitutional right relevant to Mitchell's claims, § 2244(d)(1)(C) does not apply.[6]

---

[6] Each federal district court in Oklahoma has previously concluded, albeit in unpublished decisions, that § 2244(d)(1)(C) does not provide habeas petitioners one year from July 9, 2020, to file a timely federal habeas petition because the *McGirt* Court did not recognize any new constitutional right when it determined that Congress took no action to disestablish the Muscogee (Creek) Nation Reservation. *Jones v. Pettigrew*, No. CIV-18-633-G, 2021 WL 3854755, at *3 (W.D. Okla. Aug. 27, 2021) (unpublished); *Sanders v. Pettigrew*, No. CIV-20-350-RAW-KEW, 2021 WL 3291792, at *5 (E.D. Okla. Aug. 2, 2021) (unpublished); *Littlejohn v. Crow*, No. 18-CV-0477-CVE-JFJ, 2021 WL 3074171, at *5 (N.D. Okla. July 20, 2021) (unpublished); *Berry v. Braggs*, No. 19-CV-0706-GKF-FHM, 2020 WL 6205849, at *6-7 (N.D. Okla. Oct. 22, 2020) (unpublished).

## C.    28 U.S.C. § 2244(d)(1)(D) does not apply.

Alternatively, Mitchell contends that his petition is timely under 28 U.S.C. § 2244(d)(1)(D).   Dkt. 1, Pet. 13; Dkt. 10, Resp. 1-2.   Under § 2244(d)(1)(D), the one-year limitation period commences on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  Mitchell argues this provision applies for two reasons, neither of which is persuasive.  First, he asserts that the "OCCA decision in *Hogner v. State*, 2021 OK CR 4, gave the factual predicate to [his] claims."  Dkt. 1, Pet. 13.  But the procedural history of this case contradicts this assertion.  As previously discussed, Mitchell first challenged the trial court's alleged lack of criminal jurisdiction in March 2017, four years before the OCCA decided *Hogner*, when he filed a state habeas petition in the Alfalfa County District Court alleging that he was Native American and he committed his crime in Indian Country. In the brief period between the OCCA's decision in *Hogner* and its decision in *Wallace*, *Hogner* made it more likely that Mitchell could establish that part of his claim that alleged he committed his crime within the boundaries of the Cherokee Nation Reservation.  But the record in this case shows that Mitchell was aware of the facts relevant to his claim—i.e., his Indian status and the location of his crime—well before *Hogner* was decided.

Second, Mitchell argues that *McGirt* "adjudicate[d] a substantive fact, i.e., that the Muscogee (Creek) Nation [R]eservation continues to exist and that fact establishes the factual predicate to jurisdictional claims related to crimes committed on an Indian reservation, as here." Dkt. 10, Resp. 1-2 (footnotes omitted). This claim too fails because the record in this case demonstrates that in March 2017, before *McGirt* (or even *Murphy I*) was decided, Mitchell raised his jurisdictional claim in state court, relying on earlier cases involving the same type of claim. Again, while *McGirt* unquestionably opened a window for a few state prisoners to obtain postconviction relief on Indian-country jurisdictional claims before *Wallace* closed that window,

*McGirt* did not provide Mitchell with the factual predicate of his claim because he alleged those facts relevant to his claim in the state habeas petition he filed in March 2017.

Under the facts of this case, § 2244(d)(1)(D) does not provide Mitchell a later commencement date.

### D.  Equitable tolling is not warranted.

Finally, Mitchell contends that his circumstances warrant equitable tolling of the one-year limitation period.  Dkt. 10, Resp. 2.  To obtain equitable tolling, a habeas petitioner must allege specific facts demonstrating (1) that he diligently pursued his federal claims and (2) that extraordinary circumstances prevented him from filing a timely federal habeas petition.  *Holland*, 560 U.S. at 649; *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  Mitchell argues equitable tolling is warranted "because of the extraordinary general misunderstanding between federal authorities and state authorities as to whether any reservations continued to exist in Oklahoma," a misunderstanding he alleges "was not cleared up until the *McGirt* decision."  Dkt. 10, Resp. 2.  He also argues that he diligently pursued his jurisdictional claim after the Tenth Circuit issued its decision in *Murphy I*.  Dkt. 10, Resp. 2.

There is ample evidence in the record that Mitchell diligently pursued his jurisdictional claim beginning in 2017.  And *McGirt* radically altered the legal landscape regarding the assessment of claims challenging Oklahoma's criminal jurisdiction in Indian country—even though *McGirt* addressed only the existence of the Muscogee (Creek) Nation Reservation.  But Mitchell has not shown that the "general misunderstanding" regarding the continued existence of reservations in Oklahoma prevented him from filing a timely federal habeas petition to challenge the trial court's jurisdiction over his prosecution.  As Mitchell's own pleadings show, Indian-country jurisdictional claims did not spring into existence only after *Murphy I* and *McGirt* were decided.  For example, in his state habeas petition, Mitchell cited the OCCA's 1989 decision in

12

*State v. Klindt*, 782 P.2d 401 (Okla. Crim. App. 1989), to support his jurisdictional claim.  Dkt. 9-3, State Habeas Pet. 1.  There, the OCCA considered federal law related to criminal jurisdiction in Indian country and stated in very clear terms that "the State of Oklahoma does not have jurisdiction over crimes committed by or against an Indian in Indian Country."  *Klindt*, 782 P.2d at 403.  The OCCA also "suggest[ed] that in future cases a defendant's status as an Indian be proved when he challenges the state court's jurisdiction."  *Id.*  Similarly, in his application for postconviction relief, Mitchell cited the 1866 Treaty of Washington to support his allegation that the Cherokee Nation Reservation had not been disestablished and he cited state and federal cases from the early 1990s involving questions regarding Oklahoma's criminal jurisdiction, or lack thereof, in Indian country.  Dkt. 9-6, Appl. 3-4.  Finally, Mitchell submitted evidence with his application for postconviction relief showing that he has been a certified member of the Cherokee Nation, with a specified blood quantum, since 1984—i.e., five years before he was convicted of murder.  Dkt. 9-6, Appl. 5.

In short, Mitchell had both law and facts available to him at the time of his conviction in 1989, and, more importantly, during the applicable one-year AEDPA limitation period from 1996 to 1997, that would have permitted him to challenge the trial court's jurisdiction in state court and through a timely-filed federal habeas petition.  While Mitchell's diligence in pursuing his jurisdictional claim, beginning in 2017, is commendable, it is not sufficient to overcome his lack of diligence for the nearly three decades that passed by before he first presented that claim in state court.  Under these circumstances, the Court denies Mitchell's request for equitable tolling.

## IV.    Conclusion

Based on the foregoing analysis, the Court concludes that the petition for writ of habeas corpus is clearly untimely under 28 U.S.C. § 2244(d)(1)(A), Mitchell has not shown that his one-year limitation period commenced at a later date under either § 2244(d)(1)(C) or § 2244(d)(1)(D), and Mitchell has not shown that his one-year limitation period should be tolled for equitable

reasons.  The Court therefore grants Nunn's motion and dismisses the petition, with prejudice, as barred by 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations.  The Court further concludes that reasonable jurists would not debate the correctness of the procedural dismissal of the petition and thus declines to issue a certificate of appealability.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

       **ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.       Nunn's motion to dismiss (Dkt. 8) is **granted**.

2.       The petition for writ of habeas corpus (Dkt. 1) is **dismissed with prejudice**.

3.       A certificate of appealability is **denied**.

4.       A separate judgment shall be entered in this matter.

       **DATED** this 28th day of April 2022.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE